LAURIE A. TRAKTMAN (SBN 165588)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
email: lat@gslaw.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SHEET
METAL WORKERS PENSION PLAN OF
SOUTHERN CALIFORNIA, ARIZONA AND
NEVADA; THE BOARD OF TRUSTEES OF
THE SHEET METAL WORKERS HEALTH
PLAN OF SOUTHERN CALIFORNIA,
ARIZONA AND NEVADA; THE BOARD OF
TRUSTEES OF THE SHEET METAL
WORKERS LOCAL 88 SECTION 401(K) PLAN;
THE SHEET METAL WORKERS LOCAL 88
RETIREE HEALTH PLAN; THE SHEET METAL
WORKERS LOCAL 88 JOINT
APPRENTICESHIP AND TRAINING FUND,
INC.; THE LOCAL 88 INDUSTRY
STABILIZATION PROGRAM; THE SMACNA
OF SOUTHERN NEVADA (AKA SOUTHERN
NEVADA AIR CONDITIONING & SHEET
METAL CONTRACTORS' ASSOCIATION,
INC.) TRADES PROGRAM; AND
INTERNATIONAL ASSOCIATION OF SHEET
METAL AIR, RAIL AND TRANSPORTATION
WORKERS LOCAL UNION NO. 88 DUES,

          Plaintiffs,

                    v.

IDEAL MECHANICAL, INC.; FRANK S.
VUCKOVIC; CATHERINE ANNE VUCKOVIC;
and JAMES RICHARD BROUGHTON,
individuals,

          Defendants.

Case No.  2:18-cv-1235

Hon.

COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR
BREACH OF COLLECTIVE
BARGAINING AGREEMENT;
BREACH OF TRUST AGREEMENTS;
AND VIOLATION OF THE
EMPLOYEE RETIREMENT INCOME
SECURITY ACT OF 1974 (ERISA)

COMPLAINT

Plaintiffs, Board of Trustees of the Sheet Metal Workers Pension Plan of Southern California, Arizona and Nevada (the "Pension Plan"); the Board of Trustees of the Sheet Metal Workers Health Plan of Southern California, Arizona and Nevada (the "Health Plan); the Board of Trustees of the Sheet Metal Workers Local 88 Section 401(k) Plan (the "401(k) Plan"); the Sheet Metal Workers Local 88 Retiree Health Plan (the "Retiree Fund"); the Sheet Metal Workers Local 88 Joint Apprenticeship and Training Fund, Inc. (the "JATC"); the Local 88 Industry Stabilization Program (the "Industry Stabilization Program"); the SMACNA of Southern Nevada (aka Southern Nevada Air Conditioning & Sheet Metal Contractors' Association, Inc.) Trades Program ("Industry Fund") and International Association of Sheet Metal Air, Rail and Transportation Workers Local Union No. 88 Dues (the "Dues Fund") , (collectively referred to as the "Sheet Metal Workers' Trust Funds" or "Trust Funds"), aver as follows:

## JURISDICTION

1.      Jurisdiction in this Court is based on the exclusive jurisdiction of the District Courts to hear civil actions brought by a fiduciary pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, to redress violations or enforce the terms of ERISA or a multiemployer plan governed by Section 502(e) of ERISA, 29 U.S.C. § 1132(e).  Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2.      Jurisdiction is also based on the jurisdiction of the District Courts to hear suits for violations of contracts between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, as provided in Section 301(a) of the Labor Management Relations Act, 1947, as amended ("LMRA"), 29 U.S.C. § 185(a).

3.      Venue is proper in this District Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the district in which certain of the Plans are administered, the signatory local unions maintain their offices, and the acts mentioned below took place.

## PARTIES

<u>Plaintiffs</u>

4.      With the exception of the JATC, Dues Fund, and Industry Fund, at all times mentioned in this

complaint, the Plans have been jointly trusteed, labor-management trust funds created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  At all times mentioned in this complaint, the JATC has been a pooled trust fund created and maintained pursuant to Section 302(c)(7) of the LMRA, 29 U.S.C. § 186(c)(7).  At all times mentioned in this complaint, the Dues Fund has been a pooled trust fund created and maintained pursuant to Section 302(c)(4) of the LMRA, 29 U.S.C. § 186(c)(4).  At all times mentioned in this complaint, the Industry Fund has been an employer-trusteed trust fund established pursuant to Section 501(c)(6) of the Internal Revenue Code, 11 U.S.C. § 501(c)(6).

5.      The Pension Plan and 401(k) Plan are "employee pension benefit plans" and "multiemployer plans" as defined in Section 3(2)(A) and 3(37) of ERISA, 29 U.S.C. § 1002(2)(A) and (37)(A).  The Health Plan, JATC and Retirees Fund are "employee welfare benefit plans" and "multiemployer plans" as defined in Section 3(1) and 3(37) of ERISA, 29 U.S.C. § 1002(1) and (37)(A).

6.      The Plans were created pursuant to separate agreements and declarations of trust ("Trust Agreements") executed and maintained pursuant to collective bargaining agreements between various employer associations and individual contractors located in the Southern California, Arizona and Nevada areas performing work in the sheet metal industry, an industry affecting commerce, and various local unions of the International Association of Sheet Metal, Air, Rail and Transportation Workers Local Union No. 88.  As described more fully below, the Plans are funded by contributions from employers who are signatory to the Collective Bargaining Agreement.

7.      The administrative offices of the Pension Plan, Health Plan, Savings Plan, and Retirees Fund are located at 111 North Sepulveda Boulevard, Suite 100, Manhattan Beach, California.  The administrative offices of the 401(k) Plan, Dues Fund, Industry Fund are located at 2560 Marco Street, Las Vegas, Nevada, 89115.

<u>Defendants</u>

8.      Defendant IDEAL MECHANICAL, INC. (the "Company") is a corporation organized and existing under the laws of the State of Nevada, and a construction contractor licensed as a refrigeration and air conditioning contractor by the State of Nevada.  At all times mentioned herein, the Company has been doing business at 5654 La Costa Canyon Court, Las Vegas, NV 89139.

9.      The Company is an "employer" as defined in Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and thus

"obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.  The Company is also an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined in Sections 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agent acting in the interest of such an employer within the meaning of Section 501(3) of the LMRA, 29 U.S.C. § 142(3).

10.     Defendants FRANK S. VUCKOVIC; CATHERINE ANNE VUCKOVIC; and JAMES RICHARD BROUGHTON (collectively "Individual Defendants") are the officer, director, controlling shareholder and beneficial owner of the Company.

11.     The Individual Defendants are responsible for running the day-to-day operations of the Company and are responsible for all decisions pertaining to the payment of contributions to the Plans, including decisions whether or not to pay such contributions.

12.     Specifically, the Plans are informed and believe and on the basis of such information and belief aver, that the Individual Defendants acted on behalf of and in the interest of the Company in all aspects of labor relations and in its dealings and relations with the Plans, including but not limited to determining which employees the Company would report to the Plans, the number of hours upon which contributions would be reported as owing, and the amount of owed contributions that would be paid.  The Individual Defendants authorized and made payments of employee benefit plan contributions from the Company to the Plans.

13.     The Plans are informed and believe, and on the basis of such information and belief, aver, that the Individual Defendants are the alter ego of the Company based upon the following factors:  (i) the Individual Defendants have failed to show proper respect to the separate identity of the Company by failing to observe strict corporate formalities; siphoning funds from the Company and treating corporate assets as their own; (ii) the Individual Defendants have demonstrated fraudulent intent with respect to the Company either at the time of its formation, by, among other things, failing to adequately capitalize the Company, or, subsequent to its formation, by abusing its corporate form; (iii) the purposes of ERISA and the LMRA will be frustrated if the fiction of the separateness between the Company and the Individual Defendants are recognized and perpetuated; and (iv) recognition of the corporate entity would result in substantial injustice to the Trust Funds because, without employer contributions, the Trust Funds will be

inadequately funded, and will be unable to meet their obligations to participating employees who have contributed to the Trust Funds over the years.

14.     The Individual Defendants are "employers" or agents of an employer engaged in "commerce" and in an "industry or activity affecting commerce" as defined in Section 501(1) and (3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), or the agents acting in the interest of such an employer as defined in Section 501(3) of the LMRA, 29 U.S.C. § 142(3).  The Individual Defendants are also "employers" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and are thus "obligated to make contributions to a multiemployer plan" within the meaning of 9 U.S.C. § 1145.

15.     The Plans are informed and believe, and on the basis of such information and belief aver, that at all relevant times the Individual Defendants have been the qualifying individuals for state licensing and bond purposes, and the responsible managing officers for the Company.

16.     The Individual Defendants were the partner, joint venturer, employer, employee, actual and ostensible agent, and representative of same and, in doing the acts alleged, were acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

## THE OBLIGATION TO CONTRIBUTE

17.     The Company entered into, executed and at all material times, has been party to a written collective bargaining agreement (the "Bargaining Agreement") with International Association of Sheet Metal, Air, Rail and Transportation Workers Local Union No. 88.  The Bargaining Agreement establishes and renews the Trust Agreements.  The Plans have at all times been third party beneficiaries of the Bargaining Agreement.

18.     Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Pension Plan, Health Plan, JATC, Retirees Fund, 401(k), Dues Fund and Industry Fund are separately calculated by determining the total number of hours worked by the employer's employees in the reporting month, and multiplying these total hours by the prescribed hourly contribution rates set forth in the Bargaining Agreement.  Under the Bargaining Agreement and Trust Agreements, an employer's monthly contributions to the Savings Plan are established as a deduction from wages.  Additionally, beginning

August 1, 1990, under the Bargaining Agreement and Trust Agreements, the employers make additional contributions to the 401(k) Plan, both as based on an hourly contribution rate specified in the Bargaining Agreement and from deductions from employee wages pursuant to, and in amounts specified in, wage deduction agreements signed by the employers' employees.

19.    The Bargaining Agreement and Trust Agreements obligate an employer to file monthly remittance reports with the Plans and to pay the Plans the contributions set forth in such reports by the tenth day of the month following the month in which such contributions were earned by the employees' labor.  The Bargaining Agreement and the Trust Agreements provide that contributions are delinquent if not paid by the fifteenth day of such latter month.  The Company and the Individual Defendants are fully aware of the obligation to timely pay contributions.

20.    Because contributing employers themselves calculate and prepare the monthly reports, the Plans must rely upon the honesty of employers and their accuracy in reporting the hours worked and contributions owed on behalf of their covered employees.  To verify the accuracy of the reports, the Plans have at all times maintained and employer audit program pursuant to the Trust Agreements.  As a part of this audit program, the Plans' auditors periodically audit the books and payroll records of contributing employers.  If an audit reveals that an employer owes contributions to the Plans in excess of the amounts contained in the monthly remittance reports submitted to the Plans, the Plans assess an hourly audit fee, together with other assessments described herein.

21.    The Bargaining Agreement and Trust Agreements provide that if an employer fails to furnish remittance reports on a timely basis, it shall pay the Fund $200 per plan or ten percent of the delinquent contributions, whichever is greater, as a late filing assessment.  In addition, the Bargaining Agreement and Trust Agreements provide that if contributions to the Plans are delinquent, the employer will pay liquidated damages in the amounts of ten percent of the delinquent amount for the first month, and five percent of the delinquent amount for each month thereafter in which the contributions remain delinquent.

22.    The Bargaining Agreement and the Trust Agreements provide that an employer will be liable to the Plans for any costs incurred in, or relating to, the collection of any contributions, liquidated damages or late filing assessments due to the Plans, including interest and attorney's fees.

23.    The Bargaining Agreement and Trust Agreements provide that in the event an employer is

delinquent in the payment of contributions or liquidated damages to the Plans for a period of fifteen days or more, then such employer shall, upon written notice, be required to furnish to the Plans or their representative all records and other information deemed necessary by the Plans to enable them to file mechanic's liens, stop notices or Miller Act claims on behalf of the affected employees pursuant to applicable state law, in order to collect unpaid compensation owing by the employer.  The required information includes identification of each project for which the employer supplied labor or materials, and the number of hours worked by the employer's employees at each job during the months in which the employer was delinquent.  The Trust Agreements further provide that the Plans may require the employer to submit this information to the Plans or their representative on a weekly basis while the employer remains delinquent.  The Trust Agreements also acknowledge that the parties recognize that time is of the essence in the filing of the mechanic's liens, stop notices or Miller Act claims and that the employer shall therefore supply such information immediately upon request by the Plans.  The Bargaining Agreement further provides that any failure to provide such information by Individual Defendants subjects the officers, directors and shareholders to individual liability.

24.     The Trust Funds have a collection policy in which it states that unpaid contributions are vested assets of the Trust Fund on the day they become due or delinquent.

## THE EMPLOYER'S DELINQUENCIES

25.     The Company has failed and refused to remit contributions to the Plans for audit contributions conducted for the period of June 1, 2014 through February 28, 2017.  The Company is therefore delinquent in its obligations to the Plans for such months, which the Plans will establish by proof and at present is in excess of $41,572.76.

26.     The Company owes liquidated damages and interest for the late payment of contributions for audit contributions conducted for the period of June 1, 2014 through February 28, 2017, which the Plans will establish by proof and at present is in excess of $8,314.55.

27.     The Bargaining Agreement provides for interest to be paid on all delinquent contributions, calculated at the rate of twelve percent (12%) per annum.

28.     The Company was timely notified by letter of these delinquencies and it was assessed liquidated damages, and payment of the delinquent contributions and liquidated damages was repeatedly demanded.

These letters also demanded mechanic's lien, stop notice and Miller Act claim information.  To date, the Company has failed and refused to pay the contributions and other sums owing to the Plans and has refused to furnish mechanic's lien, stop notice and Miller Act claim information.

29.     The Company is fully aware of the obligation to make contributions on behalf of covered work performed by the Company's employees and the obligation to submit accurate remittance reports, as set forth herein, and is equally aware of its failure to make such contributions.

**FIRST CAUSE OF ACTION:**

**AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES**

**FOR BREACH OF BARGAINING AGREEMENT**

30.     The Plans reaver every averment of paragraphs 1 through 29 above as if they were repeated here in full.

31.     Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Bargaining Agreement.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

32.     Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Bargaining Agreement.  As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

33.     The Plans are informed and believe, and based upon such information and belief aver, that additional delinquencies have occurred both before and after the date of this complaint, and that such delinquencies are continuing.  As a direct result, Defendants have become and will become indebted to the Plans for additional contributions and other sums in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

34.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and

that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement.  Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

**SECOND CAUSE OF ACTION:**

**AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF**

**AND DAMAGES FOR BREACH OF TRUST AGREEMENTS**

35.    The Plans reaver every averment of paragraphs 1 through 34 above as if they were repeated here in full.

36.    Defendants' failure to pay such contributions and other sums on the dates on which such contributions and other sums were due are violations of the Trust Agreements.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

37.    Defendants' failure to submit mechanic's lien, stop notice and Miller Act claim information to the Plans is a violation of the Trust Agreements.  As a direct result of Defendants' failure to furnish mechanic's lien, stop notice and Miller Act information to the Plans, the Plans have been damaged in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

38.    The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining

Agreement.  Unless Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

**THIRD CAUSE OF ACTION:**

**AGAINST ALL DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES FOR**

**VIOLATION OF ERISA**

39.     The Plans reaver every averment of paragraphs 1 through 38 above as if they were repeated here in full.

40.     By engaging in the acts described above, Defendants have violated the terms of the Plans, and thereby have violated certain provisions of ERISA including Section 515, 29 U.S.C. § 1145.  As a direct result, Defendants have become indebted to the Plans for contributions and other sums, and will become indebted to the Plans for additional contributions and other sums, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

41.     The Plans are informed and believe, and based upon such information and belief aver, that Defendants have threatened not to pay, and will refuse or fail to pay, future contributions to the Plans, and that it will thereby create future unpaid delinquencies during the remaining term of the Bargaining Agreement.  Unless the Defendants are enjoined from failing to make such contributions, furnishing such remittance reports and providing such mechanic's lien, stop notice and Miller Act claim information, as described above, the Plans will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the brief period of time in which mechanic's liens, stop notices and Miller Act claims must be recorded or filed will expire, and additionally, the Plans will be required to bring a multiplicity of actions at law to recover such delinquencies as they occur, to the Plans' great expense and

hardship.  On that basis, the Plans seek injunctive relief requiring Defendants to timely pay contributions, and to timely furnish remittance reports and mechanic's lien, stop notice and Miller Act claim information for construction projects.

42.     Because Defendants acted with malice, oppression and conscious disregard of the rights of the Plans, the Plans are entitled to an award of punitive damages as an appropriate legal remedy available under Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E), in an amount deemed appropriate by the Court.

**FOURTH CAUSE OF ACTION:**

**DAMAGES FOR MISUSE OR MISAPPROPRIATION**

**OF ASSETS OF EMPLOYEE BENEFIT PLANS**

43.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 42 above as if set forth in full.

44.     The Plans are employee benefit plans within the meaning of 18 U.S.C. § 664, in that they are subject to many of the provisions of Title I of ERISA (29 U.S.C. §§ 1001-1168).

45.     The delinquent employee benefit plan contributions referenced herein which were and are due and owing to the Plans are assets of the Plans within the meaning of Subtitle A (29 U.S.C. §§ 1001-1003) and Parts 1 (29 U.S.C. §§ 1021-1031) and 4 (29 U.S.C. §§ 1101-1114) of Subtitle B of Title I of ERISA, and 18 U.S.C. § 664.

46.     The Defendants were and are directly responsible for, and caused, the Company's failures to pay to the Plans the delinquent employee benefit plan contributions referenced herein, in violation of 18 U.S.C. § 664.

47.     Plaintiffs are entitled to damages for the Individual Defendants' violations of 18 U.S.C. § 664.

**FIFTH CAUSE OF ACTION:**

**DAMAGES FOR BREACH OF FIDUCIARY**

**DUTIES IN VIOLATION OF ERISA**

48.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47 above as if set forth in full.

49.     At all times material herein the Individual Defendants were the fiduciary with respect to the Plans

within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management or disposition of assets of the Plans.

50. By engaging in the acts and omissions to act described herein, the Individual Defendants breached their fiduciary duties with respect to the Plans within the meaning of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A).

51. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, the Individual Defendants are personally liable to make good to the Plans any losses to them resulting from each such breach of their fiduciary duties, and to restore to the Plans any profits which have been made through Individual Defendants' use of assets of the Plans, an amount presently estimated to be in excess of $49,887.31, and which will be established by Plaintiffs at trial.

52. The Plans request that they be awarded their costs of action and reasonable attorney's fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**SIXTH CAUSE OF ACTION:**

**DAMAGES FOR WRONGFUL DIVERSION OF ASSETS OF**

**EMPLOYEE BENEFIT PLANS IN VIOLATION OF ERISA**

53. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 52 above as if set forth in full.

54. By engaging in the acts and omissions to act described herein, the Individual Defendants caused assets of the Plans to inure to the benefit of an employer, namely the Company, and/or the Individual Defendants themselves, and to not be held for the exclusive purposes of providing benefits to participants in the Plans and their beneficiaries and defraying reasonable expenses of administering the Plans, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1).

55. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, the Individual Defendants are personally liable to make good to the Plans any losses to them resulting from the above-referenced wrongful diversion of assets of the Plans, and to restore to the Plans any profits which have been made through Individual Defendants' use of assets of the Plans, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

56. The Plans request that they be awarded their costs of action and reasonable attorney's fees pursuant

to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**SEVENTH CAUSE OF ACTION:**

**DAMAGES FOR PROHIBITED TRANSACTIONS**

**IN VIOLATION OF ERISA**

57.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 above as if set forth in full.

58.     By engaging in the acts and omissions to act described herein, the Individual Defendants dealt with assets of the Plans in their own interest or for their own accounts, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1).

59.     Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, the Individual Defendants are personally liable to make good to the Plans any losses to them resulting from the above-referenced prohibited transactions, and to restore to the Plans any profits which have been made through Individual Defendants' use of assets of the Plans, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $49,887.31.

60.     The Plans request that they be awarded their costs of action and reasonable attorney's fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**EIGHTH CAUSE OF ACTION:**

**DAMAGES FOR ALTER EGO VIOLATIONS**

**ESTABLISHING LIABILITY FOR INDIVIDUAL DEFENDANTS**

61.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 60 above as if set forth in full.

62.     The Individual Defendants are the alter ego of the Company based upon the following factors:  (i) the Individual Defendants have failed to show proper respect to the separate identity of the Company by failing to observe strict corporate formalities; siphoning funds from the Company and treating corporate assets as his own; (ii) the Individual Defendants have demonstrated fraudulent intent with respect to the Company either at the time of its formation, by, among other things, failing to adequately capitalize the Company, or, subsequent to its formation, by abusing its corporate form; (iii) the purposes of ERISA and the LMRA will be frustrated if the fiction of the separateness between the Company and the Individual

Defendants are recognized and perpetuated; and (iv) recognition of the corporate entity would result in substantial injustice to the Trust Funds because, without employer contributions, the Trust Funds will be inadequately funded, and will be unable to meet their obligations to participating employees who have contributed to the Trust Funds over the years.

63.     At all times material herein, the Individual Defendants were the partner, joint venturer, employer, employee, actual and ostensible agent, and representative of same and, in doing the acts alleged, was acting on behalf of such partnership and joint venture, and within the course and scope, and the apparent course and scope, of such employment, agency, and representation and on behalf of such partnership and joint venture.

64.     Pursuant to the above alter ego violations, the Individual Defendants cannot take advantage of the corporate form and are, therefore, personally liable for all amounts owed to the Plans pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

**PLAINTIFFS THEREFORE PRAY JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:**

As to Causes of Action 1, 2, 3 and 8 Only:

1.     That the Court restrain and enjoin Defendants, for so long as they remain contractually and legally bound to make payments of contributions to the Plans, from failing or refusing:

    (1)     to make payments of contributions to the Plans on the dates on which they fall due;

    (2)     to submit to the Plans any remittance reports required from contributing employers on the dates on which they fall due; and,

    (3)     to submit to the Plans any and all information deemed necessary by the Plans to enable Defendants' employees or their representative(s) to file mechanic's liens, stop notices and Miller Act claims.

2.     For payment of delinquent audit contributions from Defendants for all months that Defendants are delinquent at the time of trial, in an amount which is presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $41,572.76.

3.     For payment of liquidated damages and interest from Defendants at the time of trial and

for prejudgment interest pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and post-judgment interest in accordance with the Bargaining Agreement, the Trust Agreements and law, an amount presently unknown to the Plans, but which the Plans will establish by proof and at present is in excess of $8,314.55.

4.      For reasonable attorney's fees and costs of suit from Defendants.

As to Causes of Action 3 and 8 Only:

1.      For payment of punitive damages from the Defendants in an amount deemed appropriate by this Court.

As to Causes of Action 4, 5, 6, 7 and 8 Only:

1.      For payment from the Individual Defendants of actual damages presently estimated to be in excess of $41,572.76.

2.      For prejudgment and post-judgment interest in accordance with applicable law; an amount presently estimated to be in an amount presently unknown to the Plans, but which will established by the Plans at the time of trial.

As to Causes of Action 4, 5, 6, and 7 Only:

1.      For an order directing the Individual Defendants to account for and pay over to the Plans all profits which have been made through his use of assets of the Plans, pursuant to Section 409 of ERISA, 29 U.S.C. § 1109.

2.      For reasonable attorney's fees and costs of suit from Individual Defendants, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

As to All Causes of Action:

1.      For such other and further relief as to this Court may seem just and proper.

Dated:  February 13, 2018                    Respectfully submitted,

                                             **GILBERT & SACKMAN**
                                             A Law Corporation


                                             By:___/s/Laurie Traktman_____
                                                   Laurie A. Traktman
                                                   Attorneys for Plaintiffs